## HALE v. ST. LOUIS & S. F. R. CO.

No. 2334. Opinion Filed January 21, 1913.

Rehearing Denied September 2, 1913.

(134 Pac. 949.)

**LIMITATION OF ACTIONS—Computation of Time—Nonresidence—Corporations.** The general policy of the state to require nonresident corporations to become resident persons, by a compliance with section 43, art. 9, of the Constitution, sec. 260, Williams' Ann. Ed., in order that the state may regulate and control same, in intrastate matters, and in order that all intrastate controversies between such corporations and citizens of the state, whatever the amount involved may be, shall be determined under the laws of the state and adjudicated by the courts of the state, is paramount to a contingent statute authorizing service of process on local agents, where the corporations have refused to comply with the law. And when such corporations refuse to submit themselves to the law, and persist in doing business within the state in violation of such state policy, they cannot avail themselves of the benefits of a statute of limitations, enacted for the exclusive benefit of resident citizens.

(Syllabus by Harrison, C.)

*Error from District Court, Kiowa County;*
*James R. Tolbert, Judge.*

Action by C. B. Hale against the St. Louis & San Francisco Railroad Company. Judgment sustaining demurrer for defendant, and plaintiff brings error. Reversed.

*O. B. Reigel* and *Moss, Turner & McInnis,* for plaintiff in error.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for defendant in error.

Opinion by HARRISON, C.   This action was begun in the district court of Kiowa county December 17, 1909, by C. B. Hale against the St. L. & S. F. Railroad Company for injuries alleged to have been received through the negligence of the company on November 20, 1907.   Defendant's demurrer to plaintiff's petition was sustained on the ground that the petition showed on its face that the alleged injuries were received more than two years before the filing of the suit.   Plaintiff refused to plead further, and brought the case here on a transcript.

The sole proposition involved in the case is whether a foreign corporation which has refused to comply with the laws of the state by filing a copy of its articles of incorporation within the state and to appoint an agent, as required by law, upon whom service of process may be had, may receive the benefits of the statutes of limitations.   It is contended by the railroad company that plaintiff's cause of action, being for personal injuries, is barred by subdivision 3, sec. 5550, Comp. Laws 1909 (Rev. Laws 1910, sec. 4657), which reads as follows:

. "Within two years:   An action for trespass upon real property; an action for taking, detaining or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud."

On the other hand, it is contended by plaintiff that defendant, being a foreign corporation, cannot claim the benefit of the statute of limitation because of section 5553, Comp. Laws 1909 (Rev. Laws 1910, sec. 4660), which reads as follows:

. "If, when a cause of action accrues against a person, he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if, after the cause of action accrues, he depart from the state, or abscond, or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought."

The railroad company meets the effect of this section by section 5607, Comp. Laws 1909 (Rev. Laws 1910, sec. 4719), which reads as follows:

"If any railroad or stage company, or corporation, fail to designate or appoint such person, as in the preceding sections is provided and required, such process may be served on any local superintendent of repairs, freight agent, agent to sell tickets, or station keeper, of such company or corporation in such county, or such process may be served by leaving a copy thereof, certified by the officer to whom the same is directed, to be a true copy, at any depot or station of such company or corporation, in such county, with some person in charge thereof, or in the employ of such company or corporation, and such service shall be held deemed complete and effectual."

The contentions of the two parties, briefly summed up, are: By the plaintiff: That a foreign corporation, being out of the state, having refused to comply with the laws of the state, and being a nonresident, under section 5553, *supra,* cannot claim the benefits of the statutes of limitations. And by the railroad company: That, notwithstanding it has failed to comply with the laws of the state, it may yet claim the benefit of the statute of limitation, because section 5607, *supra,* provides that service of process may be had on any local superintendent of repairs, freight agent, agent to sell tickets, or station keeper of such company. Numerous authorities are cited by opposing counsel in support of their respective contentions.

As there is such a marked conflict between the two lines of decisions on this question, it becomes necessary to review some of the leading cases and to ascertain the reason upon which they are based in order to a proper comparison of their weight. A number of states, to wit, Kansas, Nevada, Wisconsin, Missouri, and New York, hold, under statutes similer to section 5553, *supra,* that foreign corporations, although under statutes similar to section 5607, *supra,* they may be served with process within the state, yet cannot avail themselves of the benefits of the statute of limitations. While, on the other hand, a greater number of states, under statutes somewhat similar, have held the contrary. The point of divergence seems to be over what con-

stitutes the test of the question. The former states, on the theory that a foreign corporation is a person without the state, make the question of *residence* the test. Some of the other line of decisions make the question *"whether or not service may be had within the state"* the test, while others, partially at least, qualify the latter test.

*Williams v. Metropolitan Street Ry. Co.,* 68 Kan. 17, 74 Pac. 600, 64 L. R. A. 794, 104 Am. St. Rep. 377, 1 Ann. Cas. 6, wherein the sole question involved was whether a foreign corporation transacting business in that state could plead the statute of limitations in bar of an action originating in that state, in favor of a resident plaintiff, is a case which, although decided in December, 1903, some ten years subsequent to the. adoption of our Code from that state, is based upon a line of decisions which have been followed by the Kansas court from the earliest decisions of the state. And inasmuch as the court,. speaking through Mr. Justice Smith, exhaustively reviews all the leading decisions on the question, not only from the state of Kansas, but from other jurisdictions, we quote at length from the opinion. After stating the proposition involved, the court said:

"In *Mary E. Lane, Adm'r, v. National Bank of the Metropolis,* 6 Kan. 74, it was held that the personal absence of the debtor from the state, even if he retained a residence here at which process against him might be served, was sufficient to take the case out of the statute. This case has been followed repeatedly. *Hoggett v. Emerson,* 8 Kan. 262; *Morrell v. Ingle,* 23 Kan. 32; *Conlon v. Lanphear,* 37 Kan. 431, 15 Pac. 600; *Ament v. Lowenthall,* 52 Kan. 706, 35 Pac. 804; *Coale v. Campbell,* 58 Kan. 480, 484, 49 Pac. 604; *Investment Co. v. Bergthold,* 60 Kan. 813, 58 Pac. 469. In the early case of *Bank of Augusta v. Earle,* 13 Pet. 519, 588, 10 L. Ed. 274, Chief Justice Taney said: 'It is very true that a corporation can have no legal existence out of the boundaries of the sovereignty by which it is created. It exists only in contemplation of law, and by force of the law, and where that law ceases to operate, and is no longer obligatory, the corporation can have no existence. It must dwell in the place of its creation, and cannot migrate to another sovereignty.' * * *  In *Shaw v. Quincy Mining Company,* 145 U. S. 444, 450, 12 Sup. Ct. 935, 937, 36 L. Ed. 768,

Mr. Justice Gray, after quoting the above language of Chief Justice Taney, said: "This statement has been often reaffirmed by this court, with some change of phrase, but always retaining the idea that the legal existence, the home, the domicile, the habitat, the residence, the citizenship of the corporation can only be in the state by which it was created, although it may do business in other states whose laws permit it.' "

*Lafayette Ins. Co. v. French,* 18 How. 404, 15 L. Ed. 451, is also reviewed, citing Clark & Mar. Priv. Corp. 356, and, after quoting from Mr. Justice Valentine in *Land Grant Ry. Co. v. Com'rs Coffey Co.,* 6 Kan. 253, the court resumes:

"The corporation sued in this action, like all others, is, in the words of Chief Justice Marshall, 'an artificial being, invisible, intangible, and existing only in contemplation of law.' In *State v. Water Co.,* 61 Kan. 547, 558, 60 Pac. 337, 341, it was said: 'A corporation exists by the will of a sovereign power. To this superior authority it owes an allegiance which it cannot abjure.'

"If the Metropolitan Street Railway Company was, in contemplation of law, present in this state from May, 1894, until June, 1901, then the action was barred. The corporation was sued. It is not contended that the body corporate moved itself into this state, but that, having agents here, their presence, while transacting business in its behalf, amounted to the presence of the corporation itself, within the meaning of the statute of limitations above set out. If, as stated by Chief Justice Taney, a corporation cannot migrate from one state to another, then the intangible body which was sued in this action was at all times absent from this state and present in the state of Missouri. * * *

"In the brief of counsel for the street railway it was said: 'The full object and purpose of our law has been subserved when a plaintiff for the full period of limitation has been in a position to sue upon his claim and recover a personal judgment against the defendant.'

"The same argument was made in behalf of Senator Lane in 6 Kan., *supra,* who maintained a residence in Lawrence, in this state, where personal service could have been had by leaving a copy of the summons, under section 64 of the Code (Gen. Stat. 1901, sec. 4494), and a personal judgment obtained thereon, which would be good everywhere. The court, however, held that the statute of limitations, which excludes the time during which the debtor is absent from the state, should receive the natural meaning the words used import. The plaintiff in the Lane case was nowise obstructed or delayed in bringing his ac-

tion by the absence of the debtor in Washington, for during the whole time of such absence he could have obtained service of summons as valid in all respects as if had personally on Mr. Lane in this state.   *   *   *

"It will be noted that the court," referring to *Bonifant v. Doniphan,* 3 Kan. 35, "applied the language of section 4449 of the present statute, *supra,* to an artificial being—a corporate body—and gave it the same effect as if an absent individual were defendant in the action.   The same application of the statute was made in *Aetna Life Ins. Co. v. Koons,* 26 Kan. 215, the third paragraph of the syllabus reading: 'Where the petition alleges that the defendant is a foreign insurance corporation, created and existing under the laws of Connecticut, with its principal office in the city of Hartford, in that state, it sufficiently appears therefrom that the defendant is a nonresident, and not present in the state.   *   *   *'

"While a valid judgment may be taken against a corporation in this state by service here on its officers or agents transacting business for it, yet such fact does not compel us to hold that, within the meaning of our limitation law, it is personally present in the state when served.   In the case of Senator Lane a valid personal judgment could have been obtained against him by his creditor by service of summons left at his usual place of residence in Kansas, although at the time he was temporarily absent in Washington in discharge of his official duties.   In *Foster-Cherry v. Caskey,* 66 Kan. 600, 72 Pac. 268, it was held that, although the principal business of a foreign corporation was transacted in this state, such fact did not authorize the taxation of its capital stock here.   The case of *Commonwealth v. Standard Oil Co.,* 101 Pa. 119, 146, was quoted: 'The domicile of the Standard Oil Company is in the state of Ohio.   Being a corporation, it is an invisible, artificial, and intangible thing. When it sent its agents to this state to transact business, it no more entered the state in point of fact than any other foreign corporation, firm, or individual who sends an agent here to open an office or branch house.'

"Wisconsin has a limitation statute like ours.   The clause relevant here reads:   'If, when the cause of action shall accrue against any person, he shall be out of this state, such action may be commenced within the terms respectively limited (six years) after such person shall return or remove to this state.'

"This provision was held to apply to the temporary absence of a resident of the state, although during such absence a summons might have been served by leaving it at his usual place of

abode. *Parker v. Kelly,* 61 Wis. 552, 555, 21 N. W. 539. Following this, in *Larson v. Aultman & Taylor Co.,* 86 Wis. 281, 286, 56 N. W. 915, 39 Am. St. Rep. 893, it was decided that a foreign corporation came within the purview of the limitation statute above quoted. The court said that, the word 'person' being applicable to corporations as well as to individuals, it was obvious that when the cause of action accrued the corporation was 'out of the state.' In *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367, 377, 78 N. W. 407, 41 L. R. A. 557, the case of *Larson v. Aultman & Taylor Co., supra,* was followed. On a motion for rehearing it was said: 'The appellant argued that * * * a foreign corporation which has acquired a domicile in this state for the purposes of litigation is not a nonresident in such sense as to suspend the operation of the statute of limitations against it. 6 Thompson, Corp. 7841. The motion was denied.'

"In most of the cases cited by counsel for defendant in error the right of a foreign corporation to plead the statute of limitations is made to depend on whether valid service could be had on it in the state where sued. *Winney v. Sandwich Mfg. Co.,* 86 Iowa, 608 [53 N. W. 421], 18 L. R. A. 524; *Turcott v. Railroad,* 101 Tenn. 102, 45 S. W. 1067, 40 L. R. A. 768, 70 Am. St. Rep. 661. As we have shown, such is not the test in this state. The last case cited expressly recognizes that the doctrine contended for by defendant in error does not obtain in Kansas. It may be said that a foreign corporation doing business in this state through agents is constructively present here for the purposes of valid service of summons on it, although it is actually out of the state. *Merchants' Mfg. Co. v. Grank Trunk Ry. Co.,* 13 Fed. (C. C.) 358. The constructive presence of Senator Lane in Kansas at his place of abode in Lawrence, where valid service might have been had, did not avail him during his actual absence from the state.

"An examination of the decisions of different states on the subject in hand will disclose that in almost all of them, where it has been held that a foreign corporation situated like defendant in error may invoke the limitation laws of the jurisdiction where it is sued, *statutory provisions differing from ours exist.* A notable exception, however, is found in Nebraska where, under a statute like section 4449, General Statutes of 1901, *supra,* the doctrine of the Lane case and others cited above is denied. In *Bauserman v. Blunt,* 147 U. S. 647, 657, 13 Sup. Ct. 466, 470, 37 L. Ed. 316, the court said: 'But what may be the law of Nebraska is immaterial. The case at bar is governed by the law of Kansas, and the duty of this court to follow as a

rule of decision, the settled construction by the highest court of Kansas of a statute of that state is not affected by the adoption of a different construction of a similar statute in Nebraska or in any other state.'·

"On the question involved see, also, *Boardman et al. v. Lake Sh. & Mich. So. Ry. Co.*, 84 N. Y. 157, and cases cited; , *State v. National Accident Society of New York*, 103 Wis. 208, 79 N. W. 220; *Hanchett v. Blair*, 100 Fed. 817, 41 C. C. A. 76; *Barstow v. Union Con. S. M. Co.*, 10 Nev. 386; *Clarke v. Bank of Mississippi*, 10 Ark. 516, 52 Am. Dec. 248."

Inasmuch as the foregoing opinion presents a review of all the leading cases bearing directly on the point in issue, we deem it unnecessary to cite or quote from other authorities on this view, further than to cite *Clarke v. Bank of Mississippi*, 10 Ark. 516, reported in 52 Am. Dec. 248, and notes, for the reason that the converse of the proposition is therein discussed, and the theory of the case rested upon the same doctrine announced by the line of decisions upon which *Williams v. Street Ry. Co.*, *supra*, was decided. Defendant in error quotes from the rule announced in 25 Cyc. 1242, as follows:

"A corporation created by the laws of the state of the forum must be treated as a citizen of that state, and the absence of its officers will not necessarily carry such ideal person beyond the limits of the state. But there is a conflict of authority upon the question whether a foreign corporation is within the saving clause relating to absence or nonresidence from the state, at least in so far as the question of its right to plead the statute of limitations is concerned. Certainly the corporation is absent or nonresident in the sense that it cannot plead the statute, when it has never been subject to the process of the courts. But the predominating judicial opinion is that a corporation, although created by the laws of another state, should be deemed to be present in the state of the forum if it is there for the purpose of its business, in compliance with the laws of the state in its behalf, so that it is subject to the process of the state; that such a presence will avail the foreign corporation under a plea of limitations, and a want of such presence will deprive it of this advantage, under the saving clause as to absence or nonresidence."

This text is supported by decisions from the following states, to wit: Alabama, California, Illinois, Iowa, Minnesota, Missis-

sippi, Missouri, Montana, North Dakota, Tennessee, Texas, Virginia, and United States Supreme Court. Also, *Thompson v. Texas Land & Cattle Co., Ltd.* (Tex. Civ. App.) 24 S. W. 856, is cited and exhaustively quoted from by defendant in error. In this opinion the Texas Civil Court of Appeals says:

"A corporation can only be present in any locality, outside of that in which it is created, by and through its agent and officers, and the facts that it was doing business in Texas, and had two officers who were resident citizens of the state, and that service could be and was obtained on it, show that, whether a citizen or not, appellee was a foreigner, resident in the state of Texas, and was residing here at the time of the filing of the suit. The presumption would be, in the absence of an allegation to the contrary, that the foreign corporation doing business in Texas was conducting it under the laws of the state."

Also, in the opinion in *King v. National Mining & Ext. Company,* 4 Mont. 1, 1 Pac. 727, quoted from by defendant in error, we find the following language:

"The transcript in this case does not disclose how service was had upon the respondent, as it does not contain a copy of either the summons or return thereof, or any other method of service. But as the facts above stated in relation to its having an agent upon whom process might have been served do appear in the record, it will be presumed that service of the summons was had upon such agent. We have, therefore, in this case a foreign corporation (the respondent) within the jurisdiction of the district court, and during the period above stated, doing the business for which it was incorporated openly and publicly, and for this purpose having an office within such jurisdiction, and an agent and superintendent residing therein, and also owning and being possessed of real and personal property within this territory."

Numerous other authorities are cited and extensively quoted from in defendant in error's brief; but, as the cases above quoted from discuss the real basis of most of the opinions cited in the brief, it is unnecessary for the purposes of the case at bar to review all of them. However, it will be observed that neither of the foregoing opinions makes the question of obtaining service on a local agent the sole test; but in each opinion, as well

as the text quoted from 25 Cyc., there are other reasons by which the rule is partially supported, other grounds upon which it is partially rested, other elements in the test, to wit:

"If it is there for the purpose of doing business in compliance with the laws of the state" (25 Cyc., *supra*), or "has an agent and office within the state" (*Texas Land & Cattle Co., supra*), "and was doing business in Texas and conducting it under the laws of the state" (*Id.*), or "having an office within such jurisdiction and an agent and superintendent residing therein" (*National Mining & Ex. Co., supra*).

We cannot say to what extent these qualifications may have influenced the courts in the above decisions. Nor do we undertake to say what they would have been with such qualifications eliminated. Some states, as Nebraska and Illinois, have apparently elected to stand on the one foot, *i. e.*, that, if service may be had within the state, then "limitation will run." But it is not disclosed from the decisions cited from those states whether they have other statutes and constitutional provisions requiring the same things to be done by foreign corporations which our statutes and Constitution require.

Section 260, Williams' Ann. Const. Okla., provides:

"No corporation, foreign or domestic, shall be permitted to do business in this state without first filing in the office of the Corporation Commission a list of its stockholders, officers, and directors, with the residence and post-office address of, and the amount of stock held by, each. And every foreign corporation shall, before being licensed to do business in the state, designate an agent residing in the state; and service of summons or legal notice may be had on such designated agent and such other agents as now are or may hereafter be provided for by law. Suit may be maintained against a foreign corporation in the county where an agent of such corporation may be found, or in the county of the residence of plaintiff, or in the county where the cause of action may arise."

Section 5605, Comp. Laws 1909 (Rev. Laws 1910, sec. 4717), provides:

"Every railroad company or corporation, and every stage company doing business in Oklahoma, or having agents doing business therein for such corporation or company, is hereby required to designate some person residing in each county, into

which its railroad line or stage route may or does run, or in which its business is transacted, on whom all process and notices issued by any court of record or justices of the peace of such county may be served."

Section 5606, Comp. Laws 1909 (Rev. Laws 1910, sec. 4718), provides:

"In every case such railroad company or corporation, and stage company, shall file a certificate of the appointment and designation of such person, in the office of the clerk of the district court of the county in which such person resides; and the service of any process upon the person so designated, in any civil action, shall be deemed and held to be as effectual and complete as if service of such process were made upon the president, or other chief officer of such corporation or stage company. * * * "

From the foregoing provisions of the Constitution and statutes, it is the evident policy of the state to require foreign corporations, doing business within the state, to become residents of the state, to comply with its laws, to submit themselves to state control, and their intrastate controversies, whatever the amount involved may be, to the courts of the state. This policy permeates the entire framework of our organic law; it is the paramount policy of the state in its regulation and control of foreign corporations doing business within the state. The maintenance of such policy is of vital importance to the state, and its soundness is to be determined exclusively by the state. It is important to the state in the maintenance of its theory of state government that its residents, whether they be *natural* or *legal* persons, be justly and impartially protected in all their rights, and that such rights shall be determined under the laws of the state and adjudicated by the courts of the state. This policy is partially thwarted, and its effectiveness materially impaired, by the refusal of nonresident corporations to comply with the law by which they may become resident persons (for legal purposes), and by their persistence in doing business within the state in open violation and flagrant disregard of the state laws. Thus, by their own actions and of their own accord, they openly disavow their residence within the state.

The question then arises, For whose benefit was the statute of limitations put in force? Evidently for those residing within the state, for even citizens of the state cannot avail themselves of the benefit of such statutes during their absence from the state, "and if, after the cause of action accrues, he depart from the state  *  *  *  the time of his absence  *  *  *  shall not be computed as any part of the period within which the action must be brought." Section 5553, Comp. Laws 1909 (Rev. Laws 1910, sec. 4660). This was the settled construction of these statutes by the courts of Kansas long prior to their adoption by Oklahoma.

In *N. M. R. Co. v. Akers,* 4 Kan. 453, 96 Am. Dec. 183, it was held that to deny a citizen the benefit of the limitation laws during an absence from the state—under the statutes, valid service could be had during such absence—and then give a nonresident corporation the benefit of such limitation laws because, under the statutes, service could be had on it, would be to discriminate in favor of nonresident corporations.

But it is contended by defendant in error, and held by some of the authorities cited in his brief, that the reason for this law is removed by a statute authorizing service of process to be had on local agents. This position is not wholly tenable. The full purpose of the law is not met by a statute authorizing service of process on a local agent. Complications might arise under which such a law would not be wholly adequate. The foreign corporation might have no property in the state out of which a judgment could be satisfied, thus necessitating the collection of such judgment in a foreign state, where it is possible for the question to arise whether a judgment obtained upon such service of process was such a judgment, *in personam,* as could be satisfied out of defendant's property found in a foreign state. But whether the latter question should arise or not, the remedy is yet not as speedy, not as free from probable complications and delay, as in actions between residents of the state. The statute authorizing service on a local agent was not put in force for the purpose of affecting or qualifying the statutes of limitation, nor for the purpose of justifying foreign corporations in violating

the law; it was enacted for the purpose of affording a remedy, as nearly adequate as possible, against foreign corporations who refuse to comply with the law. Therefore, viewing the two statutes together, considering the object and purpose for which they were enacted, the one being a statute of repose, the benefits of which are given only to residents of the state, the other being a contingent remedy, available only where foreign corporations have refused to comply with the law, it is obvious that the purpose of the two statutes grew out of the general policy of the state to require foreign corporations to become citizens, subject to state control, in order that equal rights, and facilities for the adjudication of same, might be afforded to all residents, whether they be legal or natural persons.

In reaching this conclusion we have not overlooked the fact that the state of Kansas, since the adoption of our statutes from that state, and since the decision in *Williams v. Metropolitan Street Ry. Co., supra,* was rendered by the Supreme Court of that state, has amended its statute of limitations as follows:

*"Provided, this act shall not apply to any foreign corporation authorized to do business in the state upon which service of process can be had within the state."* (Italics ours.) (Gen. St. Kan. 1909, sec. 5613 [Code Civ. Proc. sec. 20]).

Nor do we undertake to say whether, by this amendment, the state of Kansas meant to change its former state policy. The inference is that it did not. For, in the above amendment, we observe the following significant clause, *"authorized to do business in the state."* Now, for a foreign corporation to be authorized to do business within our state, it is required to comply with certain laws. By a compliance with such laws, it becomes a resident of the state for all legal purposes, and entitled to the benefit of all laws enacted exclusively for the benefit of resident citizens, and the policy of the state is unimpaired.

For these reasons, the order sustaining the demurrer should be reversed, and the cause remanded for trial.

By the Court: It is so ordered.